**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAY COLLINS | : | |
| 126 Sylvan Terrace | : | |
| Harrisburg, PA 17104 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.:_____ |
| | : | |
| v. | : | |
| | : | |
| REARDEN STEEL FABRICATION, INC. | : | **JURY TRIAL DEMANDED** |
| 100 Market St. | : | |
| Lemoyne, PA 17043 | : | |
| and | : | |
| STEVE CAPUANO | : | |
| c/o Rearden Steel Fabrication, Inc. | : | |
| 100 Market St. | : | |
| Lemoyne, PA 17043 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Jay Collins (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Rearden Steel Fabrication, Inc. and Steve Capuano (*hereinafter* collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), and the Pennsylvania Human Relations Act

("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  Plaintiff intends to amend his complaint to include discrimination and retaliation claims under the PHRA once his claims have been administratively exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's PHRA claims will mirror his Title VII claims asserted herein.

7.  Defendant Rearden Steel Fabrication, Inc. (hereinafter "Defendant Entity") is a corporation in the business of fabricating structural and miscellaneous steel for commercial, industrial and institutional buildings and other structures.

8.  Defendant Steve Capuano (hereinafter "Defendant Capuano") is the President and owner of Defendant Entity. During Plaintiff's employment, Defendant Capuano was a high-level decision maker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant Entity including but not limited to hiring, firing, and issuing discipline.

9.  At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

10.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.  Plaintiff is a black (African-American) male.

12.  Plaintiff was hired to work for Defendants on or about September 3, 2019.

13.  During the course of his employment with Defendants, Plaintiff initially worked as a painter and then a steel cutter. After cross-training, Plaintiff floated as a laborer wherever needed and helpful to Defendants on a full-time basis

14.  While employed with Defendants, Plaintiff directly and indirectly reported to several members of management, including but not limited to Supervisor/Foreman – James Brenneman (hereinafter "Brenneman" – Caucasian), Supervisor/Foreman – Nathan Klunk (hereinafter "Klunk" – Caucasian), General Manager – Logan Sheely (hereinafter "Sheely" – Caucasian), and President – Defendant Capuano.

3

15.    Plaintiff was hired by Brenneman; however, during the last approximate 12 – 15 months of his employment with Defendant Entity, he began to report to Klunk.

16.    During the majority of his employment with Defendant Entity and at the time of his termination, Plaintiff was the only African American/black worker.[2]

17.    Throughout his employment with Defendants, Plaintiff was subjected to blatant racial discrimination, such that he was subjected to a hostile work environment. For example:

    i.    Plaintiff was called a "nigger" on multiple occasions by his co-worker, Scott (last name unknown – hereinafter "Scott");

    ii.    Plaintiff was subjected to continual racist jokes and comments. For example, but not intending to be an exhaustive list:

        1.    Brenneman commented that he was happy to see Plaintiff come to work on Martin Luther King Day and that he was glad Plaintiff did not feel the need to take the day off;

        2.    Plaintiff's co-workers would state that they told their friends and relatives that they work with a black guy and that they are not racist because they work with a black guy;

        3.    Klunk referred to Plaintiff as "chocolate milk;"

        4.    Plaintiff was told by some coworkers that he was the only black guy that they have worked around;

        5.    When Plaintiff would assist another employee with a task, Defendant Capuano would state "how many monkeys does it take to carry a football" (meaning how people does it take to perform a

_____

[2] At the time of Plaintiff's hire, there was one other black employee working for Defendants; however, he was terminated approximately two months into Plaintiff's employment with Defendants.

4

specific task). Defendant Capuano would only ask this question when Plaintiff was assisting another co-worker. Plaintiff never observed Defendant Capuano make this comment when one Caucasian employee was assisting another Caucasian employee.

6. Plaintiff was referred to as a "Madingo;"[3]

7. Plaintiff was approached by another manager, Todd (last name unknown) and questioned about the Black Lives Matter Movement – asking Plaintiff whether he "believe[s] in that" and "why are black people acting crazy;" and

8. Klunk informed Plaintiff that when a Caucasian employee's girlfriend was ill, he sent flowers; however, when Plaintiff informed Klunk that his mother had passed away, Klunk didn't even offer his verbal condolences;

9. On one occasion, Defendant Capuano wanted Plaintiff to paint something. Defendant Capuano told Plaintiff that he could put on the white paint suit with the hood and then proceed to make a discriminatory joke stating: "oh wait you wouldn't be comfortable with the white hood, right? That will bring back bad memories." (clearly referring to the KKK).

---

[3] A slang word used when referring to a "sexually strong black male" and sometimes used to describe a black male's genitalia as being large. *See* https://www.urbandictionary.com/define.php?term=Madingo. This term is also a play on the word "Mandingo" – which is a member of a people of western Africa in or near the upper Niger Valley. *See* https://www.merriam-webster.com/dictionary/Mandingo.

18.    In addition to the aforesaid racial comments, Plaintiff was also subjected to unwanted sexual comments, gestures, and advances by Klunk. For example, but not meant to be an exhaustive list:

      i.  Klunk would always try to hug Plaintiff and asked him on several occasions if he wanted/needed a hug (to which Plaintiff declined);

     ii.  Klunk would consistently tell Plaintiff about him [Klunk] wearing pink thongs;

   iii.  Klunk stated to Plaintiff that he wouldn't mind having a little "chocolate milk" (referring to Plaintiff), but that his wife may not like it because Plaintiff is a "Madingo."

19.    Plaintiff complained of the aforesaid racial discriminatory and sexually harassing comments to Defendant Capuano and Klunk at least 3-5 times leading up to his ultimate termination from Defendant Entity on or about June 17, 2021 (discussed further *infra*).

20.    Despite Plaintiff's repeated complaints to Defendant Capuano and Klunk, Defendant Entity's management did nothing to properly investigate or remedy his concern of racial discrimination and sexual harassment, and instead the racist behavior by his co-workers and by Defendant Capuano and Klunk continued.

21.    Shortly following his last complaint of racial discrimination, Plaintiff was abruptly terminated from his employment with Defendants on or about June 17, 2021.

22.    Klunk and Sheely informed Plaintiff that he was being terminated for "absenteeism." This was the only reason given to Plaintiff for his termination on or about June 17, 2021.

23.    After his termination, Plaintiff called Defendant Capuano and informed him that Klunk and Sheely had terminated him for absenteeism. In response, Defendant Capuano said that he would call Klunk and Sheely and get back to him, but Defendant Capuano never followed up.

24.    The purported reason for Plaintiff's termination is completely pretextual as (1) Plaintiff only missed sporadic time due to depression from the work environment; (2) Plaintiff informed Defendant Capuano that the aforesaid discriminatory and negative treatment was making him depressed; (3) Plaintiff was never issued any written discipline before his termination notating that his alleged absenteeism was an issue; (4) other employees missed more time than Plaintiff and were not terminated – and in particular – Brenneman had no-call, no-shows and/or extensive absences (as he was openly referred to as an alcoholic) and was not terminated for the same.

25.    After Plaintiff filed an EEOC Charge of Discrimination, Defendant changed the reasoning for Plaintiff's termination.

26.    In response to Plaintiff's EEOC Charge of Discrimination, Defendants claim that Plaintiff was terminated for absenteeism but also because he damaged expensive materials through negligent operation and handling of the materials, which cost the company considerable expense.

27.    Furthermore, Defendants alleged that Plaintiff failed to report or admit to the damage until he was presented with video footage clearly recording the incident – and was issued a written letter of discipline for the same, dated 6/14/21

28.    This reasoning provided for Plaintiff's termination (as detailed in Paragraphs 25 and 26 of the instant Civil Action Complaint) is also pretextual and was merely fabricated as a way to conceal Defendants' discriminatory/retaliatory termination of Plaintiff (as they presumably know that they selectively considered Plaintiff's absenteeism when making the decision to terminate him).

29.     Specifically: (1) Plaintiff was written up for damaging a steel pipe; however, this write up was issued to Plaintiff months before his termination; (2) Plaintiff was never given a write up on June 14, 2021 regarding destruction of materials; (3) when Plaintiff was issued a write up for destruction of a steel pipe, he was never shown video footage and he never denied that he caused damage to the steel pipe; and (4) Plaintiff was never told at the time of his termination that he was being terminate for damaging material and his damage to a steel pipe (months prior) was never even mentioned at the time of his termination.

30.     Plaintiff believes and therefore avers that he was terminated because of his race, in retaliation for complaining of racial discrimination, and/or in retaliation for complaining of sexual harassment.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Both Defendants-**

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.     During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment, derogatory racial comments and jokes, and demeaning/discriminatory treatment because of his race and/or complaints of race discrimination.

33.     Plaintiff complained to Defendant Capuano and Klunk of the aforesaid racial discrimination at least 3-5 times leading up to his ultimate termination from Defendant Entity.

34.     Despite Plaintiff's repeated complaints to Defendant Capuano and Klunk, Defendant Entity's management did nothing to properly investigate or remedy his concern of racial

discrimination, and instead the racist behavior by his co-workers and by Defendant Capuano and Klunk continued.

35.    Shortly following his last complaint of racial discrimination, Plaintiff was abruptly terminated from his employment with Defendants for completely pretextual reasons.

36.    Plaintiff believes and therefore avers that his race was a determinative and/or motivating factor in Defendants' decision to terminate him.

37.    Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination to Defendants' management – including Defendant Capuano.

38.    Defendant Capuano is also individually liable because he intentionally considered Plaintiff's race as a motivating or determinative factor in making the decision to terminate him and/or because he intentionally terminated Plaintiff due to his complaints of race discrimination.

39.    These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

## COUNT II
### Violations of Title VII
**([1] Race Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**
**-Against Defendant Entity Only-**

40.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41.    During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment, derogatory racial comments and jokes, and demeaning/discriminatory treatment because of his race and/or complaints of race discrimination.

42.    Plaintiff complained to Defendant Capuano and Klunk of the aforesaid racial discrimination at least 3-5 times leading up to his ultimate termination from Defendant Entity.

43.     Despite Plaintiff's repeated complaints to Defendant Capuano and Klunk, Defendant Entity's management did nothing to properly investigate or remedy his concern of racial discrimination, and instead the racist behavior by his co-workers and by Defendant Capuano and Klunk continued.

44.     Shortly following his last complaint of racial discrimination, Plaintiff was abruptly terminated from his employment with Defendants for completely pretextual reasons.

45.     Plaintiff believes and therefore avers that his race was a determinative and/or motivating factor in Defendants' decision to terminate him.

46.     Plaintiff also believes and therefore avers that he was terminated in retaliation for complaining of racial discrimination to Defendants' management – including Defendant Capuano.

47.     These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT III**
**Violations of Title VII**
**(Retaliation)**
**-Against Defendant Entity Only-**

48.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49.     Plaintiff was subjected to multiple unwelcomed sexual comments, advances, and gestures during his employment with Defendants by his supervisor, Klunk.

50.     Plaintiff objected to and complained about Klunk's sexually harassing comments, gestures, and advances to Defendant Capuano and Klunk; however, Klunk's behavior did not stop, and Defendant Capuano performed no meaningful investigation into Plaintiff's complaints.

51.     Shortly after his last complaint of sexual harassment, Plaintiff was terminated from his employment with Defendants for completely pretextual reasons.

52.     These actions as aforesaid constitute unlawful retaliation under Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.     Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.     Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

11

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  March 29, 2022